UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LANI BRANDMIRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:12-CV-670-TAV-CCS |
| | ) |
| THE KROGER CO., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This civil action is before the Court on Defendant's Motion for Summary Judgment [Doc. 10]. Plaintiff has responded [Doc. 11], and defendant has filed a reply to plaintiff's response [Doc. 12]. The Court has carefully considered the motion and the record and, for the reasons stated below, finds that defendant's motion for summary judgment should be granted.

**I.  Background**

Plaintiff, Lani Brandmire, began working for defendant, The Kroger Co. ("Kroger"), in August 2006 and was employed there until her termination in September 2012 [Doc. 10-1 p. 3]. Plaintiff was hired as a store clerk in the Drug/General Merchandising department for two years, and was ultimately transferred to the produce department [*Id.*]. As a produce store clerk, plaintiff's job primarily consisted of transporting large boxes of fruit to the "prep room," and cutting fruits for mixed fruit bowls [*Id.* at 4].

On March 5, 2011, plaintiff suffered injury to her right wrist while she was picking up a watermelon [Doc. 10; Doc. 10-1 p. 4]. Plaintiff waited for her store's assistant manager, Mr. Graves, to arrive at work and then reported her injury to him [Doc. 10-1 p. 5]. Mr. Graves directed plaintiff to go the company doctor at Park West Medical facility, but because it was a Saturday and Park West was closed, plaintiff went to another emergency room [*Id*. at 6–7]. Plaintiff underwent an x-ray where it was found that nothing was broken [*Id*. at 7]. She was placed in a cast and a sling and told to go to the company doctor the next Monday [*Id*.]. Plaintiff was subsequently diagnosed with De Quervain's tendonitis in her right wrist, and she underwent surgery a few months later when pain medication and cortisone shots proved ineffective [Doc. 10; Doc. 10-1 p. 7]. Plaintiff ultimately "filed a workers' compensation claim against [defendant] for the necessary treatment associated with her injury" [Doc. 11].

After her injury in March 2011—excluding the two weeks she was off for her surgery in October—plaintiff worked for defendant until her termination approximately one year and six months later [Doc. 10; Doc. 10-1 p. 8]. During this period, plaintiff worked on "light duty" based on restrictions from her doctor prohibiting her from lifting anything over 15 pounds [Doc. 10-1 p. 7]. While on light duty, before her surgery, plaintiff performed light duty-assignments around the store like restocking salads, or doing prime-time, which involved using a grocery gun to "shoot[] holes to make sure that the inventory gets ordered" [*Id*.]. After her surgery, plaintiff performed tasks that involved putting back light items on the shelves and pulling items forward on the shelves

2

[*Id*. at 8].  Plaintiff also eventually started working at the front end of the store operating the store's self-check lane, U-Scan, as well as working as a floor supervisor [*Id*.].

On September 26, 2012, defendant's Human Resources Coordinator, Thomas Coburn, conducted an interactive meeting with plaintiff after being notified that permanent restrictions had been assigned for plaintiff [Doc. 10; Doc. 10-5 p. 3].  During this meeting, Mr. Coburn terminated plaintiff's employment after determining that defendant could not do anything to accommodate plaintiff's permanent restrictions in light of the essential job functions of all the positions available [*Id*.].

Plaintiff filed suit in the Circuit Court for Knox County, Tennessee on November 28, 2012, alleging retaliatory discharge [Doc. 2-1 Ex. A ¶ 5].  Plaintiff's cause of action stems from her allegation that she was discharged because of her assertion of her right to workers' compensation after her wrist injury [*Id*].  Defendant filed a timely Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441 [Doc. 1].

**II.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

**III.    Analysis**

In support of its motion for summary judgment, defendant presents two arguments. Defendant argues that it is entitled to summary judgment because: (1) plaintiff cannot make out a prima facie case of retaliatory discharge for filing a workers' compensation claim because plaintiff is unable to show that there is a causal connection between her filing her workers' compensation claim and her subsequent termination; and (2) plaintiff cannot prove that the reasons for her termination were pretextual because defendant had a lawful, non-discriminatory reason for terminating her [Doc. 10].

**A.    Plaintiff's Prima Facie Case of Retaliatory Discharge**

In *Clanton v. Cain-Sloan Co.*, Tennessee Supreme Court first recognized an employee's right to proceed against his or her employer for retaliatory discharge taken against that employee for filing or threatening to file a workers' compensation claim. 677 S.W.2d 441 (Tenn. 1984). To make out a prima facie case of retaliatory discharge, a plaintiff must prove that: (1) the plaintiff was an employee of the defendant; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). Once the plaintiff establishes each of these elements, the burden shifts to the defendant-employer to articulate a reason for the discharge that was legitimate and

5

non-retaliatory. *Id.*[1] If the employer proffers a legitimate, non-retaliatory reason for the discharge, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual. *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 72, 804 (1973)).

Here, plaintiff has established, and defendant does not dispute, the first three elements of her prima facie case—that is, that: (1) plaintiff was an employee of Kroger; (2) plaintiff made a claim against Kroger for workers' compensation benefit; and (3) plaintiff's employment was terminated by Kroger. Defendant argues, however, that plaintiff has failed to meet her threshold burden of establishing a causal connection between her filing a workers' compensation claim and her termination [Doc. 10].

A plaintiff, in a retaliatory discharge claim, may establish causal connection between a workers' compensation claim and a subsequent discharge through either direct evidence or compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). Although courts have been hesitant to conclusively list what kind of evidence definitively establishes the requisite causal relationship, several courts have opined on what evidence is insufficient to create the link, including subjective beliefs and speculation. *See, e.g.*, *Chappell v. GTE Prods.*

---

[1] In *Anderson*, the Tennessee Supreme Court adopted the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). 857 S.W.2d at 558. The court later overruled the *Anderson* decision by holding that the *McDonnell-Douglas* burden-shifting framework does not apply at the summary judgment stage in Tennessee. *See Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010). The Tennessee General Assembly subsequently enacted Tenn. Code Ann. § 4-21-311(e) which superseded the court's holding in *Gossett* and re-instated the burden-shifting framework.

6

*Corp.*, 803 F.2d 261, 268 (6th Cir. 1989) (finding that a plaintiff's subjective beliefs and mere speculation are not sufficient to create a causal relationship); *Vaughan v. Harvard Indus., Inc.*, 926 F. Supp. 1340, 1350 (W.D. Tenn. 1996) (holding that causation cannot be established simply because the plaintiff cannot think of any other reasons for the discharge) *overruled on other grounds by Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999); *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) ("[A] plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge. Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge." (citations omitted)).

Additionally, a plaintiff, in an effort to show a causal connection, can present circumstantial evidence in various forms, which may include: (1) "the employer's knowledge of the compensation claim"; (2) "the expression of a negative attitude by the employer towards an employee's injury"; (3) "the employer's failure to adhere to established company policy"; (4) "discriminatory treatment compared to similarly situated employees"; (5) "sudden and marked changes in an employee's performance evaluations after a workers' compensation claim"; or (6) "evidence tending to show that the stated reason for discharge was false." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006).

7

Plaintiff argues that causal connection between her workers' compensation claim and her subsequent discharge is proven by defendant's demonstration of "hostile retaliation tactics against Mrs. Brandmire almost immediately after she reported her work injury" [Doc. 11]. Plaintiff alleges that "a mere one day after Mrs. Brandmire was hurt, her store supervisor, Michael Graves, began questioning the validity of Mrs. Brandmire's claim by insisting that an existing injury somehow contributed to her tendon snapping, even though there was nothing in her medical records indicating any such problem" [*Id.*]. Plaintiff also argued that defendant "continued its punitive tactics against Mrs. Brandmire by later instructing her that she needed to see the company physician on a Saturday, knowing that she would be traveling alone while injured, even though he physician's offices were entirely closed for the weekend" [*Id.*]. Furthermore, plaintiff argues that Kroger has a history of firing employees who seek compensation benefits for work-related injuries and who are represented by her attorney, Mr. Bobo [*Id.*]. In support of this contention, plaintiff lists the names of three other employees who were terminated and whose cases are being handled by plaintiff's current attorney [*Id.*].

In reply, defendant states that there is no evidence to show that defendant demonstrated hostile retaliation tactics simply by Mr. Graves filling out a "Questionable Claim Form" as was part of company policy [Doc. 12]. Rather, Mr. Graves merely had some concerns about the validity of plaintiff's claims because he had observed her wearing a wrist brace prior to the injury, and plaintiff admitted to wearing one occasionally [Doc. 12; Doc. 10-1 p. 5]. Defendant also states that plaintiff's argument

8

that Mr. Graves told her to visit the company physician, who turned out to be unavailable on Saturdays, is not malicious or retaliatory motive as Mr. Graves sent her there on a Saturday because the injury occurred on a Saturday [Doc. 12].

The Court is persuaded by defendant's argument that plaintiff cannot prove the requisite causal connection based on Mr. Graves's Questionable Claims complaint that he filled out a day after plaintiff's injury and before plaintiff had filed or displayed any intent to file a workers' compensation claim. Plaintiff also displays no evidence that Mr. Graves's directive to go to the company's physician was done maliciously, or with actual knowledge that the medical center was closed. Additionally, plaintiff's argument alluding to defendant's practice of firing other employees represented by her attorney is not sufficient to prove a causal connection because plaintiff's conspiracy theories or subjective beliefs are insufficient to prove the requisite causal connection for a retaliatory discharge claim. *See, e.g., Chappell*, 803 F.2d at 268 (finding a plaintiff's "[m]ere personal beliefs, conjecture, and speculation" insufficient to support an inference of causal connection); *Shroyer v. Dollar Tree Stores, Inc.*, No. 3:09-CV-203, 2011 WL 5184069, at *10 (E.D. Tenn. Nov. 1, 2011) (finding that the plaintiff's general allegations and conclusory statements were insufficient to prove causal connection); *Newcomb*, 222 S.W.3d at 391 ("A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship."). Moreover, plaintiff has failed to provide any other evidence of retaliation based on her workers' compensation claim. In fact, plaintiff

9

admitted that at no time did defendant display any negative attitude towards her injury or ask her to do anything that violated her light-duty restrictions [Doc. 10-1 p. 10].

Viewing the facts in the light most favorable to the plaintiff, as the Court is required to do on a motion for summary judgment, plaintiff has not presented sufficient evidence to create a genuine issue of material fact on there being a causal connection between her claim and her discharge. Thus, because there is no evidence in the record on which to submit the issue of causation to the jury, defendants are entitled to judgment as a matter of law. *See Anderson*, 857 S.W.2d at 558–59.

### B. Plaintiff's Evidence of Pretext

Even if plaintiff were to establish a causal connection between her workers' compensation claim and her discharge, defendant has articulated a legitimate, non-pretextual reason for plaintiff's discharge: that plaintiff was discharged because her permanent restrictions made her physically unable to perform the essential functions of her job and the restrictions could not be reasonably accommodated by defendant [Doc. 10].

Plaintiff argues that defendant's reasons are purely pretextual because plaintiff "could perform, and had been performing, the essential functions of her job for nearly and entire year prior to her termination without any complaints, corrections, or issues by any agent or member of the Defendant's staff" [Doc. 11]. Plaintiff also states that her ability to perform her job in a satisfactory manner is evidenced by the fact that she earned an employee of the month award two weeks before her termination, and the fact that she

was never warned prior to her termination about possible shortcomings or physical inability to do her job [*Id.*]. Furthermore, plaintiff argues that pretext is proven by the fact that the investigation into plaintiff's work performance and physical capabilities did begin until after she had filed her workers' compensation claim; by the fact that Mr. Coburn did not provide plaintiff with her essential job functions or send them to her treating physician; and by the fact that Mr. Coburn failed to consider alterative positions or make reasonable accommodations [*Id.*].

In response, defendant argues that while plaintiff was on light duty, she was not performing all the essential duties of her position; rather, she was merely performing certain modified tasks within her job [Doc. 12]. Defendant states that plaintiff had been working at the front end mainly operating the store's self-check, U-Scan, which is not a stand-alone position but, rather, a part of the front-end store clerk position, which would require the ability to operate a check-stand, bag groceries, and help customers load their vehicles [*Id.*]. Specifically, defendant argues that plaintiff was not entitled to permanent light-duty work, and it only allowed plaintiff to perform modified tasks "on a temporary basis to allow Plaintiff time to recover and return to a job she could physically perform. It was only after Plaintiff received her permanent restrictions, and it became clear that she could never perform the job of Checker, Produce Clerk, or any other position, was she terminated" [*Id.*].

11

It is well established that a plaintiff's physical inability to do the job is a legitimate reason for termination. *See Anderson*, 857 S.W.2d at 559; *see also Johnson v. Cargill, Inc.*, 984 S.W.2d 233, 234 (Tenn. Ct. App. 1998) (citing physical inability to do the job as a non-pretextual, non-retaliatory reason for termination). Moreover, "[a]bsent a contractual arrangement, an employer is under no legal duty to provide an alternative position to a disabled employee." *Johnson*, 984 S.W.2d at 235 (citing *Leatherwood v. United Parcel Serv.*, 708 S.W.2d 396 (Tenn. Ct. App. 1985)). Here, defendant terminated plaintiff after learning that her temporary restrictions had become permanent, and that they would disqualify her from performing all of the essential job functions of any available position [Doc. 10; Doc. 10-5 p. 3]. Although defendant is not obligated to provide alternative positions to plaintiff, the record indicates that Mr. Coburn considered the essential job functions of every position in the store, which a store clerk would have qualified for, before making the decision that plaintiff's decision could not be accommodated [*Id.*].

Thus, even if plaintiff provided a sufficient indication of a causal link between the filing of her workers' compensation claim and her discharge, because defendant articulated a legitimate, non-discriminatory reason for plaintiff's discharge, defendant is entitled to judgment as a matter of law.

## IV. Conclusion

For the reasons stated above, the Court will **GRANT** Defendant's Motion for Summary Judgment [Doc. 10]. This case will be **DISMISSED** and the Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE